IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff,           )
                                     )
                                     ) Case No.
        vs.                          ) 8:07-CR-00369-RAL-TBM
                                     )
                                     )
GABRIEL AGUIRRE-CUERO,               )
                                     )
                Defendant.           )

_____

REVOCATION OF SUPERVISED RELEASE HEARING
BEFORE THE HONORABLE RICHARD A. LAZZARA
UNITED STATES SENIOR JUDGE

JANUARY 5, 2018
9:30 A.M.
TAMPA, FLORIDA
_____






        Proceedings recorded by mechanical stenography,
transcript produced using computer-aided transcription.
_____

DAVID J. COLLIER, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA  33602

**APPEARANCES:**


**FOR THE GOVERNMENT:**


       Matthew H. Perry

       United States Attorney's Office

       400 North Tampa Street, Suite 3200

       Tampa, Florida  33602

       (813) 274-6000


**FOR THE DEFENDANT:**


       Tamara Eve Theiss

       Federal Public Defender's Office

       400 North Tampa Street, Suite 2700

       Tampa, Florida  33602-4726

       (813) 228-2715


INTERPRETER:  Ricardo Arenas

                    P R O C E E D I N G S

                     – – – o0o – – –

1    THE COURT:  Madam Clerk, would you please swear
2    the interpreter.
3    COURTROOM DEPUTY:  Yes, Your Honor.
4    Please raise your right hand.
5    Do you solemnly swear or affirm, under the penalty
6    of perjury, that you will to the best of your ability
7    translate from English to Spanish and from Spanish to
8    English all questions and responses propounded by this
9    Court?
10   INTERPRETER:  I do.  For the record, Rick Arenas,
11   A-R-E-N-A-S.
12   THE COURT:  Good morning, Mr. Arenas.
13   Madam Clerk, would you call the case.
14   COURTROOM DEPUTY:  The case before this Court is
15   Case Number 8:07-CR-369-T-26TBM, United States of America
16   versus Gabriel Aguirre-Cuero.
17   THE COURT:  Thank you.
18   Counsel, please state your appearances.
19   MR. PERRY:  Good afternoon, Your Honor.
20   Matthew Perry for the United States.  With me at the table
21   is Probation Officer Tim Adair.
22   MS. THEISS:  Good morning.  Tamara Theiss from the
23   Public Defender's Office on behalf of Gabriel Aguirre-Cuero.

1      THE COURT:  Do you have Immigration with you?

2      MR. PERRY:  The probation officer is here with me,

3  Your Honor.

4      THE COURT:  Mr. Cuero, please stand and be sworn

5  by the Clerk.

6      COURTROOM DEPUTY:  Please raise your right hand.

7      Do you solemnly swear or affirm, under the penalty

8  of perjury, that the statements you shall give will be the

9  truth, the whole truth and nothing but the truth?

10      THE DEFENDANT:  Yes.

11      THE COURT:  Have a seat, please.

12      You are Gabriel Aguirre-Cuero?

13      THE DEFENDANT:  Yes.

14      THE COURT:  We are here today for a revocation

15  proceeding, and during the course of this proceeding you may

16  be asked some questions.  If you're asked a question and you

17  choose to answer, do I have your assurance you will answer

18  all questions truthfully and completely?

19      THE DEFENDANT:  Yes.

20      THE COURT:  I have in front of me a document, it's

21  filed at docket 130 of the Court file, and it's a petition

22  that the Probation Office presented to me, and in the

23  petition they requested that I issue a warrant for your

24  arrest because you violated one of the terms and conditions

25  of your supervised release, that is, you committed a new

crime.  What it claims is that from at least January of 2015

until February 19th of 2015 you committed the offense of

manufacturing and distributing and possessing with the

intent to manufacture and distribute cocaine while on board

a vessel subject to the jurisdiction of the United States,

and it further says that you were later convicted of this

crime in the United States District Court for the Southern

District of New York on January 20th of 2017.

Do you understand what you're charged with doing,

sir?

THE DEFENDANT:  Yes.

THE COURT:  Ms. Theiss?

MS. THEISS:  Yes, Your Honor.  It is

Mr. Aguirre-Cuero's intention at this time to admit the

conduct alleged in the petition.

THE COURT:  Is that true, sir?

THE DEFENDANT:  Yes.

THE COURT:  You were on a boat with cocaine?

THE DEFENDANT:  Yes.

THE COURT:  And you went before another Federal

Judge and you pled guilty to that offense?

THE DEFENDANT:  Yes.

THE COURT:  And he sentenced you to 144 months?

THE DEFENDANT:  Yes.

THE COURT:  I want you to understand that by

making this admission, that the advisory guideline range is 24 to 30 months of imprisonment, but I could give you up to five years.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Perry, what's the Southern District of New York -- are they handling these cases now?

MR. PERRY:  Yes, Judge.  The Southern District of New York, frankly, always has been involved, or almost always has been involved in these cases.

THE COURT:  Where was he found?  Where was he interdicted, do you know?

MR. PERRY:  You know what, Judge, I was in such a hurry to get here, I forgot to bring my reading glasses.  It's in my file.  I don't know where they actually interdicted him, Your Honor, but I will tell you in answer to your questions, there's a lot of other districts that are now doing these cases, like Alabama.

THE COURT:  Alabama?

MR. PERRY:  Yeah, they're starting to spread these things out, Texas, Houston.  But the Southern District of New York has for a long time, Miami has, and we have.

THE COURT:  Where was he caught?

MS. THEISS:  Your Honor, he was arrested in Colombia and awaiting extradition --

THE COURT:  So they extradited him?

1          MS. THEISS:  Yes.  It's in the --

2          MR. PERRY:  Judge, I'm pretty sure that I did a

3   writ to bring him out of New York.  Maybe when he was

4   arrested from Southern District, maybe that was a second

5   tier case and they indicted him and brought him up there,

6   maybe that's what she's referring to, but I thought he was

7   found on a boat.

8          THE COURT:  Whatever it is, he was convicted.  He

9   presents himself -- well, let me make the following

10  findings.

11         A is the highest grade violation.  I is his

12  original criminal history category.  His advisory range of

13  imprisonment is 24 to 30 months, he's subject to five years

14  of imprisonment as a maximum statutory penalty, and he faces

15  five years as a maximum statutory term of supervised

16  release.

17         Any objections to those findings, Ms. Theiss?

18         MS. THEISS:  No, Your Honor.

19         THE COURT:  Mr. Perry?

20         MR. PERRY:  No, Your Honor.

21         THE COURT:  Ms. Theiss, I'll hear you.

22         MS. THEISS:  Yes, Your Honor.  Do you prefer me at

23  the lecturn, Your Honor?

24         THE COURT:  That's fine.

25         MS. THEISS:  Your Honor, I actually sort of

1  switched my gear a little bit this morning as to what we
2  were intending to ask the Court to do.

3           After conferring with Probation a little bit, it
4  is our intention this morning to try to fashion -- to ask
5  for a sentence that is fashioned as to not give
6  Mr. Aguirre-Cuero much time over the 144 months.
7  I understand that I really am not able to ask you for a
8  concurrent sentence.  The reasoning for trying to come up
9  with another alternative is because -- it actually has to do
10 with the extradition and what happened there.

11          Mr. Aguirre-Cuero was detained, detained for a
12 year and a half in a Colombian jail in Bogota called
13 La Picota Prison awaiting extradition to New York on this
14 case, along with a number of other detainees.  During that
15 period Mr. Aguirre-Cuero suffered a number of maladies and
16 injuries because of the conditions at that prison, which
17 were detailed in great length in the sentencing memorandum
18 that was filed in New York and was actually at a certain
19 point taken up by Human Rights Watch.  There was rampant
20 disease and lack of proper sanitation and a number of other
21 injuries.

22          Mr. Aguirre-Cuero came out of that experience with
23 a latent and I think somewhat permanent diagnosis for
24 tuberculosis.  That is based on a system of providing food
25 to inmates that involved using water that was involved with

1    the sanitation system there.  He also suffered a very

2    serious injury to his wrist.  I'm not sure that you can see

3    it from there.  It was never treated.  He fell down an

4    entire flight of stairs carrying a giant jar of this

5    basically poisoned food, and that was never treated, it is

6    protruding permanently.  I don't know if he can ever have

7    that injury rebroken or treated in BOP, but it has now been,

8    I think, more than two years since that injury occurred.

9            It is unclear to me, and I did attempt some

10   contact with BOP to try to find this out, but I am not at

11   all confident that he is going to receive credit for any of

12   that time that he served in the Bogota prison, which was

13   I think without question beyond what we would expect anyone

14   to endure in a prison in the United States.

15           THE COURT:  Of course that would be up to -- that

16   would be -- that would relate to the sentence out of

17   New York, correct, not here?

18           MS. THEISS:  Yes.  I mean, I'm looking sort of as

19   a birdseye view of ultimately -- as I said, I think I'm

20   trying to be a little bit global about how I think about

21   this.  I think, because I am not really able to ask you for

22   concurrent time, I was prepared to come in and ask you for a

23   24 month sentence within the guideline and simply on the low

24   end that's concurrent.  I think because I'm not really able

25   to do that, I may -- we should try at least to ask the Court

to fashion some sort of a sentence below that guideline to at least address the issue that this pretty torturous period in his detention may never be credited and it is not something that the U.S. intends to do to its inmates.

This is a situation in Colombia that was written about extensively and addressed by human rights organizations, it is one of the worst prisons in the world, and it was a very bad and very dangerous situation for him, which most of our other boat cases --

THE COURT:  Well, did he contest extradition, or did he waive it?

MS. THEISS:  No, I think it was because he was arrested in Colombia.  The information I have is that he was waiting there with actually about 150 other detainees at this prison awaiting extradition to the United States.  The prison is called La Picota, and the -- I did finally manage to access the sentencing memo, which indicates some of the things that happened there and the reports both in Colombia and internationally about the conditions at this prison. I don't get to complain about how the U.S. treats prisoners who are overseas, but in this case it does cause me to try to ask this Court to at least recognize that at some point in fashioning his sentence here.

THE COURT:  All right.  Thank you.

MS. THEISS:  Thank you.

1      THE COURT:  Mr. Cuero, is there anything you care

2  to say to me?

3      MR. PERRY:  I should mention, Your Honor, as you

4  know, he is 55 years old, so with his current sentence,

5  without credit, he will be 67 once he is released, within

6  the guidelines.

7      THE DEFENDANT:  Well, what can I say?  First of

8  all, I ask that God bless you and -- well, what can I say?

9  I'm very remorseful about all of this.  I want to apologize

10  for this, for what happened.  The truth is that I did this

11  because of need.

12      During all the time that I was out, I remained

13  unemployed.  I was unable to get any work.  All the services

14  to my house were interrupted.  I didn't have any food for my

15  children.  I had nothing.  Every day I would go out looking

16  for work, but I was unable to find any.

17      So I wasn't able to get any work, and I had

18  incurred many debts, and every day I would have collectors

19  trying to collect their debts, and my situation became

20  desperate.  So I was offered this and, you know, when one is

21  in debt and you're being hounded every day by collectors,

22  I took the decision to do this and try to eliminate my

23  debts.  So a lady loaned me -- or I borrowed from a lady

24  15 million pesos, I owed -- strike that.  I was owing a lady

25  15 million pesos.  She has loaned me 5 million so that I

could try to do something, but I wasn't successful, and the debt had escalated to 15 million because of the high interest rates.  So then I committed this in order to be able to pay that lady back, and at the end I wasn't even able to pay her.  I still owe her 5 million pesos.

That is all.  I apologize to you for what I did, but my need led me to do this.

THE COURT:  Were you caught on a boat?

THE DEFENDANT:  Yes.

THE COURT:  You were at sea and you were caught on a boat?

THE DEFENDANT:  I was in the island of Malpelo, M-A-L-P-E-L-O.

MS. THEISS:  The first time or this last time?

THE DEFENDANT:  This last time.

MS. THEISS:  And the Judge needs to know whether you were arrested.

THE DEFENDANT:  Yes.  Yes, in the island of Malpelo, that's where I was.

THE COURT:  Where is that?

MS. THEISS:  It's --

MR. PERRY:  I think it's off the coast of Colombia, Your Honor.

THE COURT:  So he obviously wasn't arrested on a boat.

1          MR. PERRY:  In that conspiracy, that's my
2    understanding, Judge.
3          THE COURT:  All right.  Mr. Perry, what says the
4    Government?
5          MR. PERRY:  Can I have just a second, Judge,
6    please?
7          INTERPRETER:  And, Your Honor, Mr. Aguirre-Cuero
8    has informed the interpreter that Malpelo is an island off
9    the Pacific Coast of Colombia.
10          MR. PERRY:  Judge, may it please the Court.
11          THE COURT:  Yes, sir.
12          MR. PERRY:  I think there's a legal matter that we
13    need to address first.
14          Counsel indicated to you that she thought she was
15    constrained to not ask for a concurrent sentence, and that
16    in fact is not the law, I believe, Judge.
17          THE COURT:  I can give concurrent time.
18          MR. PERRY:  I'm sorry?
19          THE COURT:  I think I can give concurrent time,
20    can't I?
21          MR. PERRY:  Yes, Judge.  Under 7B1.3(f) it
22    indicates "shall," in other words, some shall be
23    consecutive; however, the guidelines have been found to be
24    advisory, so the advisory nature trumps the shall, and my
25    concern is that on a 2255 or an appeal later, because

1  counsel said to you that she didn't think that she --

2          THE COURT:  No, I was going to make that comment.

3  I know I've given concurrent time before and that's an

4  option I have.

5          MR. PERRY:  I would at least defer to her, Judge,

6  for her to make that pitch so that --

7          THE COURT:  Do you want concurrent time?

8          MS. THEISS:  I do, Your Honor, and if the Court is

9  willing to do it under 3553(a), that would be one of them,

10  for all the reasons stated.

11          MR. PERRY:  Thank you, Your Honor.  May I proceed?

12          THE COURT:  Yeah, go ahead.

13          MR. PERRY:  So, Judge, I'm not -- I'm empathetic

14  to this defendant's cause, but I'm not sympathetic to it,

15  Judge.  And let me just set the stage here a little bit,

16  okay?

17          This case -- your case that you sentenced this man

18  in as a captain on a boat --

19          THE COURT:  I know all about it.  2800 kilograms

20  of cocaine.

21          MR. PERRY:  Yeah.

22          THE COURT:  He's the captain.

23          MR. PERRY:  Yep.

24          THE COURT:  Not only that, he makes an admission

25  that he had previously -- I'm looking at the PSR.  He had

previously participated in a cocaine smuggling venture and that he has participated in 15 to 20 refueling operations for cocaine smuggling vessels in the past.

Now, notwithstanding that fact, his guideline range was -- offense level was 35, Criminal History Category I, so it was 168 to whatever it was.

MR. PERRY:  210.

THE COURT:  But the Government came in and filed a motion for downward departure based on his substantial assistance, it was filed by Mr. Downing, it's at docket 43, I granted it, departed two levels, gave him 135 months, and a few years later our now interim United States Attorney, Ms. Chapa-Lopez, at docket 90 files a Rule 35 motion for reduction of his sentence based on substantial assistance, specifically he substantially assisted the Government in the prosecution of four members of a significant drug trafficking organization that has been dismantled, so they requested a six level reduction.  I granted it, I gave him 70 months, and I guess that ended up being a time served sentence and he's deported to Colombia.  Now he's back.

MR. PERRY:  Well, and you've shortened up my argument pretty quick there, Judge, but that's all true, and that's exactly what I was going to tell you, and I'll highlight that with the fact that, as you've noted, he was facing 210 months in the Southern District of New York and

1    got a 144 month sentence.

2         THE COURT:  They allowed him to plead down, huh?

3         MR. PERRY:  I don't know what happened, Judge.

4    I can only tell by what I know from experience, he would

5    have been facing a 20 year sentence if he was --

6         THE COURT:  Did he get a substantial assistance

7    motion up there?

8         MS. THEISS:  No, Your Honor.  I think his original

9    indictment required a five year mandatory minimum and -- but

10   he had a guideline of 151, I believe, so I don't think there

11   was a 5K filed in the case that was just resolved last year.

12   He received a small variance, but at 144 months he still got

13   12 years.

14        MR. PERRY:  Regardless, Judge, the variance is

15   another break, and there was 350 kilograms of cocaine in

16   that case, and so in this instance, Your Honor, with all due

17   respect to the medical conditions and the conditions at the

18   jails, frankly, Judge, I hear that all the time and I am

19   empathetic to that, but what I don't hear and what we

20   typically don't hear is the harm's way that these people put

21   themselves in when they go on these smuggling ventures that

22   may be, frankly, worse than the conditions -- the people

23   that I've seen on boats are worse than some of the

24   conditions in the jails for food and water and so forth, but

25   you don't hear the aggravation part of it as it relates to

where they put themselves when they do this, all the mitigation part of it is where they end up when they do this.

So, frankly, Judge, it's our opinion and I would strongly urge the probation officer's recommendation that you impose the 30 month sentence and that you impose it consecutive in this case. Every break has been given. There has to come a point in time of consequence, Judge, and this is it.

THE COURT: Like my late mother said, God bless her, you sleep in the bed you make. He's made his bed and that's where he slept. May not have been pleasant.

You know, by all rights I could give him 60 months consecutive and I don't think the Eleventh Circuit would touch that. This man is nothing -- I mean, he can come in here -- you know, I looked at the docket and he didn't appeal or anything, so there was no transcript of the sentencing, but I bet you he got up here and he told the same -- he gave me the same old song and dance that he's giving me now. I'm not sympathetic or empathetic to his situation.

His original crime before me was 2800 kilograms, you know, that's a significant amount, even though we deal with these almost on a weekly basis in the Tampa Division of the Middle District.

        1          By the way, are we going to start sending these

        2   cases to any other divisions in the Middle District?

        3          MR. PERRY:  I don't know if Jacksonville -- it's a

        4   problem with where we bring them in, Judge.  The base is

        5   here, but some PanEx cases are going to other

        6   U.S. Attorney's Offices.

        7          THE COURT:  Has he been designated by the Bureau

        8   of Prisons yet, do you know?

        9          MS. THEISS:  I don't believe so, Your Honor, and

       10   I was waiting to address that as well.

       11          THE COURT:  Where?

       12          MS. THEISS:  Just briefly, you know.

       13          THE COURT:  Well, based on his medical condition,

       14   I ought to request the Bureau of Prisons to designate him to

       15   a medical facility, based on what you've told me.

       16          MS. THEISS:  That's one concern.  I can lay out

       17   for you the other concerns that Mr. Aguirre-Cuero has.  He

       18   does have some familiarity with BOP programs, of course.

       19          THE COURT:  I'm sure he does.

       20          MS. THEISS:  He is -- so I actually neglected to

       21   mention a couple of other issues with respect to his medical

       22   condition.  He has advancing cataracts as well and has

       23   had -- has a great deal of trouble with his eyesight.  His

       24   wrist is in chronic pain, and it's unclear at this point if

       25   BOP can do anything, but we would like to --

1          THE COURT:  Mr. Aruirre, where did you serve your

2    last term of imprisonment?

3          THE DEFENDANT:  Pennsylvania.  Loretto.

4          THE COURT:  Well, I think the best thing for me to

5    do is recommend to the Bureau of Prisons that he be

6    incarcerated in a facility that can address all of his

7    medical problems.

8          MS. THEISS:  Yes, Your Honor.  He did ask for me

9    to request of the Court that he be allowed to participate --

10   because apparently this was not done at his sentencing in

11   New York, he does want to participate in GED and English

12   classes.  He is quite desperate to participate in the Unicor

13   work program so that he can at least try to send some money

14   back home.  He was working in an electronics shop and in

15   cables.  He has expressed interest in mechanical work as

16   well.  He currently has a third grade education, and so

17   of course he would like to pursue the GED as well as the

18   English.

19         THE COURT:  Well, I think the first order of

20   priority is to get him to a facility that can treat him.

21         MS. THEISS:  Yes, Your Honor.

22         THE COURT:  All right.  If nothing further, it's

23   the judgment of the Court that the defendant is hereby

24   committed to the custody of the Bureau of Prisons to be

25   imprisoned for a term of 30 months.  That shall return

consecutively with the term of imprisonment already imposed in the Southern District of New York, which is Case Number 1:15-CR-125.

He's on a term of supervised release in New York, I assume?

MR. PERRY: He has lifetime, Judge.

THE COURT: Upon service of his sentence in this case he shall be discharged from further jurisdiction of this Court.

In imposing the sentence I have considered the factors set forth in the United States Code Section 3553(a) and the advisory guidelines and policy issued by the United States Sentencing Commission.

Ms. Theiss, any objection to my sentence or the manner in which I've imposed it?

MS. THEISS: No, Your Honor.

THE COURT: Mr. Perry?

MR. PERRY: No, Your Honor.

THE COURT: All right. I'll remand him to the custody of the United States Marshal Service to await designation by the Bureau of Prisons.

Mr. Cuero, I now advise you that you have a right to appeal from my judgment and sentence within 14 days from today's date, and if you fail to appeal within that period of time, that will be a waiver of your right to appeal.

1    I'll also advise you that you are entitled to the assistance

2    of an attorney in taking that appeal, and if you cannot

3    afford one I'll appoint one to represent you at no charge.

4    Finally, if you're unable to afford the Clerk's filing fee,

5    I'll direct the Clerk of the Court to accept your notice of

6    appeal without prepayment of that fee.

7            Ms. Theiss, I'm going to declare him to be

8    indigent for purposes of appeal.  I'm going to appoint your

9    office to represent him so that he can instruct you to file

10   a notice of appeal.

11           MS. THEISS:  Thank you.

12           THE COURT:  All right.  Thank you.

13           MR. PERRY:  Thank you, Your Honor.

14                   - - - - -

15       (Proceedings concluded at 10:01 a.m.)

16                   - - - - -

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          This is to certify that the foregoing transcript

4  of proceedings taken in a revocation of supervised release

5  hearing in the United States District Court is a true and

6  accurate transcript of the proceedings taken by me in

7  machine shorthand and transcribed by computer under my

8  supervision, this the 28th day of August, 2020.

9

10

11                                    /S/ DAVID J. COLLIER

12

13                              DAVID J. COLLIER

14                              OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25